# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

LAMARR ROWELL,

    Petitioner,

vs.

JACK PALMER, *et al.,*

    Respondents.

3:10-cv-00098-LRH-WGC

**ORDER**

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding *pro se*. Before the Court is the petition (ECF No. 4), respondents' answer (ECF No. 19) and petitioner's reply (ECF No. 20).

## I.    Background

Petitioner was arrested and charged with burglary and possession of a credit or debit card without the cardholder's consent in the Eighth Judicial District Court of Nevada and given notice of the State's intent to pursue adjudication as a habitual criminal. The arrest followed an incident at the Newton Elementary School in Henderson, Nevada, wherein petitioner entered the school premises and the classroom of a Ms. Hope Ficarro, while Ms. Ficarro was out of the classroom, and removed Ms. Ficarro's credit/debit card and driver's license from her purse.[1] Ms Ficarro returned to the classroom

---

[1] The factual background presented here is a summary of those facts presented by respondents in their Answer to the petition (ECF No. 19), which facts are supported by trial testimony as cited by respondents. This summary is not a factual finding by this Court and is presented solely for clarification of the circumstances and issues being addressed herein. The exhibits referenced in this Order were provided by respondents in support of their Answer and are found in the Court's record at ECF Nos. 14-18 unless otherwise identified.

to find petitioner there standing very near her purse. She asked him what he wanted and who he was. When petitioner offered a false name for himself and the fictitious child he said he was looking for, petitioner was escorted to the school offices and asked for identification. Petitioner said he would have to go to his car to get the ID, but once at the vehicle, he drove away, backing his vehicle the wrong way out of a one-way circular drive. The Clark County School District Police were contacted. Ms. Ficarro soon discovered the credit card and driver's license were missing from her purse.

Investigation by police and video surveillance footage soon revealed that a person resembling petitioner and driving a similar teal-colored car, had been involved in another similar school district incident. Based on the license plate number of the car used in that incident, police were able to determine the owner of the vehicle. Soon thereafter, that individual's picture (petitioner) was picked out of a photo line-up by Ms. Ficarro. Meanwhile, Ms. Ficarro's credit/debit card was used to purchase gasoline at a nearby gas station. Video footage and transaction records with credit card information from the gas station established that petitioner's vehicle was at the gas station at the time of the purchase.

## II.   Procedural History

Petitioner was arrested and, as noted, charged with burglary and possession of a credit card without the owner's consent, both felonies. Exhibit 2. The notice of habitual criminality was filed on August 27, 2007. Exhibit 3. Trial proceeded on September 24, 2007, and petitioner was convicted on September 26, 2007. Exhibit 4-9. At sentencing on April 3, 2008, petitioner was adjudicated a habitual criminal and sentenced to two concurrent terms of life with the possibility of parole after ten years. Exhibit 25. The judgment of conviction was entered on April 22, 2008 (exhibit 26) and petitioner appealed (exhibit 28) raising ten grounds for relief. The Nevada Supreme Court affirmed petitioner's conviction and sentence. Exhibit 32.

There is no record of any post-conviction review provided in support of the answer, however, petitioner has since, apparently, filed a state post-conviction petition raising claims of ineffective assistance of counsel. *See* Opposition to Motion to Amend (ECF no. 37).[2] These proceedings were

---

[2] Petitioner's motion to amend was denied by this Court on the basis that amendment would be futile at this time because petitioner had not completed his post-conviction review to the Nevada Supreme Court, and because the amendment would brings claims that were raised outside the one-year limitation period which would not relate back to the original claims under *Mayle v. Felix*, 545 U.S. 644,

commenced on February 9, 2010. The motion to amend the petition to add these still unexhausted claims was denied. The matter is ready for review.

## III.    Legal Standards

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). Therefore, this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter,* 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing

---

664 (2005).

3

1 legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts
2 of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at 413). The
3 "unreasonable application" clause requires the state court decision to be more than incorrect or
4 erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.*
5 (*quoting Williams*, 529 U.S. at 409).

6 In determining whether a state court decision is contrary to federal law, this Court looks to the
7 state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford*
8 *v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Furthermore,
9 "a determination of a factual issue made by a State court shall be presumed to be correct," and the
10 petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing
11 evidence." 28 U.S.C. § 2254(e)(1).

12 Applying these standards, the Court reviews the merits of petitioner's claims.

13 **IV.   Discussion**

14      A.   Ground One

15 Petitioner claims that he was denied due process of law as guaranteed by the Fifth and Fourteenth
16 Amendments when he was convicted on the basis of insufficient evidence. Petitioner argues that he was
17 convicted despite there being no evidence presented that he was in the school without "privilege," that
18 he was seen taking the credit card or driver's license, or that he or his vehicle was present at the gas
19 station where the credit card was used.

20 This claim was presented on direct appeal and the Nevada Supreme Court issued a "post-card
21 denial" in a footnote of the Order of Affirmance. That note stated in pertinent part, "Rowell also
22 contends that : ... (2) his convictions are not supported by sufficient evidence, .... Having thoroughly
23 reviewed Rowell's contentions, we conclude that they are without merit." Exhibit 32, p. 1 n.1.

24 Where the state court decision is unaccompanied by an explanation, the petitioner must show that
25 there is "no reasonable basis" for the decision in order to prevail. *Richter,* 131 S.Ct. at 784. In
26 determining a claim of insufficient evidence to support a conviction, "the relevant question is whether,
27 after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
28 have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

4

U.S. 307, 319, 99 C.St 2781, 2789 (1979). "Circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned." *Payne v. Borg,* 982 F.2d 335, 339 (9th Cir.1992) quoting *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir.1990).

Petitioner was convicted under Nevada statutes of burglary and possession of a credit or debit card without the owner's permission. In 2007 at the time of petitioner's conviction, the elements of those crimes are defined below:

> **NRS[3] 205.060  Burglary**: Definition; ....
> 1. A person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house trailer, airplane, glider, boat or railroad car, with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses, is guilty of burglary.
>
> **NRS 205.690  Obtaining or possessing credit card or debit card, or identifying description of credit card, credit account or debit card without consent of cardholder**; ....
> 1. A person who steals, takes or removes a credit card or debit card from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that a credit card or debit card has been so taken, removed or stolen receives the credit card or debit card with the intent to circulate, use or sell it or to transfer it to a person other than the issuer or the cardholder, is guilty of a category D felony....

In this instance, there was evidence presented at trial that Ms. Ficarro entered her classroom at 3 p.m. on March 26, 2007, to find a strange man, later identified as the petitioner, standing behind her desk only inches from her purse. Exhibit 6, Trial Transcript (TT) volume III, pp. 310-311, 315-316. Ms. Ficarro testified she observed the petitioner, who falsely identified himself as a Mr. Wilson, then "casually" put his hands in his pockets. *Id.* at 315-16. When questioned in an attempt to assist the man, petitioner falsely indicated he was in the classroom to pick up his son, Charles Wilson - a student who was not in Ms. Ficarro's class or in the classroom of a Ms. Humphrey's, also identified by petitioner as the fictitious student's teacher. *Id.* at 316-317, 326, 328. Ms. Ficarro's testimony on this point was substantiated by testimony of Ms. Humphreys. Exhibit 7, TT, pp. 399-400. When asked for some

---

[3] Nevada Revised Statutes.

5

1  identification, petitioner represented that he had left it in his car and took that opportunity to flee the
2  scene, driving away in a teal green or teal blue vehicle. Exhibit 6, pp. 330-32. Ms. Ficarro testified that
3  the school district police were notified of the events and she then returned to her classroom and
4  discovered that her credit card and driver's license were missing from her purse. *Id.* at 333. She
5  testified that she had not given anyone, including petitioner, permission to possess or use her credit card.
6  *Id.* at 338.

7  After his departure, investigators secured video surveillance footage that showed a teal green
8  vehicle pulling into a City Stop Gas Station located approximately four minutes away from the school.
9  Exhibit 7, pp. 457-459, testimony of Detective Andres Garza. The gas station manager, Eileen Cameron,
10 provided business records and testimony at trial which showed that Ms. Ficarro's credit card had been
11 used at a pump at the station at 3:24 p.m. on March 26, 2007, by a driver of a teal colored car. The
12 driver purchased $24.36 of gasoline. *Id.*

13 Investigation and surveillance video established that petitioner left the school in time to travel
14 to the gas station (exhibit 7, TT, pp. 432-50) and that he had entered the school while avoiding the front
15 entrance and the usual school check-in procedure. Exhibit 6, TT, pp. 313-315. Additionally, the
16 investigating officer, who was aware of another, similar occurrence in the school district, obtained video
17 from that location and the video established a similarity to both the petitioner and the vehicle he drove.
18 Exhibit 7, TT, pp. 562-564. The second video allowed the officer to see the license plate of the vehicle,
19 which was registered to petitioner. Exhibit 7, TT. Pp. 562-64.

20 Evidence showed that once the petitioner was identified as being the registered owner of the
21 vehicle, a photo line-up was assembled and Ms. Ficarro picked petitioner as the man who had been in
22 her classroom on March 26, 2007. Exhibit 6, TT., pp. 341-43.

23 Taking this evidence in a light most favorable to the prosecution, this Court finds that there was
24 sufficient evidence to show that petitioner was the individual who purposefully avoided the usual
25 procedure for admittance to the school building, entered a classroom under false pretenses, offered
26 school employees a false name and false story and then used or permitted another to use a credit card
27 owned by Ms. Ficarro, without her permission, to purchase gasoline at a nearby gas station. While some
28 of this evidence may be circumstantial, such evidence is proper. *Payne,* 982 F.2d at 339. The Nevada

6

1  Supreme Court's determination that this claim lacked merit was not objectively unreasonable. 28 U.S.C.
2  § 2254(d).  Ground one shall be denied.

   B.     Grounds Two and Three

Next petitioner claims he suffered a denial of due process because the Nevada burglary and unauthorized possession or use of credit card statutes are unconstitutionally vague.  In ground two, petitioner contends that he cannot understand what conduct constitutes the intent to commit larceny when entering a structure under, NRS 205.060, the burglary statute.  He argues it fails to give adequate notice of the law in order to allow citizens to conform their conduct to its requirements.  According to petitioner, this vagueness leads to arbitrary and discriminatory enforcement.

In ground three petitioner argues that NRS 205.690, the unauthorized possession or use of a credit card statute, does not require actual possession of the card or require the person to "positively or directly be present at a location where a credit/debit cared is used" in order to violate the statute and face arrest.  He claims he cannot understand the intent requirement of this statute.  He contends that this statute also encourages arbitrary and discriminatory enforcement.[4]

These grounds were denied by the Nevada Supreme Court in its "post card denial" which indicated the court has "thoroughly reviewed Rowell's contentions" finding them without merit.  This decision is entitled to the full deference from this Court as is required under 28 U.S.C. § 2254(d) and *Harrington v. Richter,* 562 U.S. at ___, 131 S.Ct. at 786.

To avoid contravening the void-for-vagueness doctrine, the criminal statute must contain "relatively clear guidelines as to prohibited conduct" and provide "objective criteria" to evaluate whether a crime has been committed. *Gonzales v. Carhart*, 550 U.S. 124, 149, 127 S.Ct. 1610 (2007) ( quoting *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525-26, 114 S.Ct. 1747 (1994))."The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties" while "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally*

---

[4] The statutes to which petitioner objects are included in the discussion of ground one and the reader may refer to that section for the specifics of each statute.

7

*v. General Const. Co.,* 269 U.S. 385, 391 (1926) citing *International Harvester Co. v. Kentucky*, 234 U. S. 216, 221(1914); *Collins v. Kentucky*, 234 U. S. 634, 638 (1914).

"Impossible standards of specificity [within a criminal statute] are not required." *Jordan v. De George*, 341 U.S. 223, 231, 71 S.Ct. 703 (1951) (citation and footnote omitted). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams,* 553 U.S. 285, 128 S.Ct. 1830, 1846 (2008). In this regard, the Supreme Court "has made clear that scienter requirements alleviate vagueness concerns." *Gonzales*, 550 U.S. at 149, 127 S.Ct. 1610; *see also Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea ").

Petitioner argues that he does not understand the "intent" required to violate these statutes. He argument is unpersuasive. As petitioner was informed in a prior petition raising the same claims as to a different conviction,[5] "intent is not conduct, rather it is a purpose or design which brings about the action. It is not motive. It is the "state of mind accompanying an act." Black's Law Dictionary 813, (Bryan A. Garner, ed. 7th ed. 1999) "Intention is the willingness to bring about something planned or foreseen; the state of being set to do something." *Id.,* at 814.  Thus, entering a building under false pretenses or possessing another credit card or credit card information for dishonest, larcenous or other illegal purposes fulfills the intent requirement. Persons of normal intelligence should be able to easily comprehend the meaning of these terms. And, petitioner, in particular, with his multiple burglary convictions, "should have an even greater understanding than the ordinary person, arising from his personal experience." *Rowell v. Palmer,* 3:10-cv-0044-RCJ-VPC (ECF No. 33), p. 5.

Petitioner has not convinced this Court that the Nevada Supreme Court's determination that his claims raised in grounds two and three were unmeritorious was either objectively unreasonable in either a factual determination or in application of pertinent United States Supreme Court law. Grounds two

---

[5] *See*, Rowell v. Palmer, 3:10-cv-0044-RCJ-VPC (ECF No. 33), p. 5. This is the federal habeas action on criminal prosecution of the second school incident noted in the procedural history and background section, *supra.*

8

and three are denied.

### C. Ground Four

Ground four claims that petitioner was denied due process as guaranteed by the Fourteenth Amendment when he was adjudicated a habitual criminal based on prior criminal convictions obtained in violation of his constitutional right to representation and because some of the convictions were too distant in time and for nonviolent crimes.

This claim was raised on direct appeal and denied by the Nevada Supreme Court in the same "post-card denial" as the other claims raised in this petition. Exhibit 32, Order of Affirmance, p. 1, n. 1.

In the habitual criminal proceedings, petitioner challenged the use of the convictions challenged here. Exhibit 17. However, during the hearing, the trial court determined that, based on documentation in the record of the various convictions, petitioner's testimony that he was not represented by counsel at sentencing was unreliable, noting the judgment of conviction indicated representation by counsel. The record of those proceedings show the trial court found the three New York and one California convictions to "pass constitutional muster" and the three Nevada convictions to all be "constitutionally valid" with "no sufficient rebutting evidence...." *Id.* at 31. The court further found that, based on petitioner's statements and arguments throughout the proceedings that he "was real good at. . . making stuff up on the fly," and that the "facts and circumstances surrounding the things that Mr. Rowell has done that he has practically no credibility at all, which bears upon the Court's decision in weighing the evidence in regards to the convictions." *Id.* at 31-32.

In Nevada, due process requires that the sentencing court use its discretion and weigh the appropriate factors before adjudicating an individual as a habitual criminal. *See White v. Grigas,* 242 F.3d 385 (9th Cir. 2000) (noting that the Nevada Supreme Court had held that it was not necessary for the court to find that the adjudication was "just and proper").

Based on the transcript of the hearing on petitioner's objection to the habitual criminal adjudication, it is clear that the state court exercised its discretion properly. Therefore, the Nevada Supreme Court's determination that the claims was without merit was proper. Petitioner was given an opportunity to present testimony and evidence to support his objections. The state court determined that

9

his testimony was unbelievable and he offered no concrete evidence to support his arguments. *See generally* Exhibit 17. This Court must grant great deference to a state court's factual findings, 28 § 2254(d), and cannot weigh the credibility of witness testimony offered at a state court proceeding. *Marshall v. Lonberge,r* 459 U.S. 422, 434, 103 S.Ct. 843, 851 (1983).

Ground four is denied.

**V.   Conclusion and Certificate of Appealability.**

Petitioner has not persuaded this Court that the Nevada Supreme Court was in error in its denial of his claims. There is nothing to support any finding that the court's determinations were either unreasonable factually or legally. The petition shall be denied.

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

//

//

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 4) is **DENIED WITH PREJUDICE**. No certificate of appealability shall issue. The Clerk shall enter judgment accordingly.

DATED this 28th day of January, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE